UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER: 98-194 |
| JESSE L. CAGE | SECTION: "B" |

## ORDER AND REASONS

Before the Court are defendant Jessie L. Cage's opposed motion for compassionate release Rec. Docs. 415 along with responsive pleadings Rec. Docs. 416, 418, 418-5 and 419. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 415) is **DENIED**.

### Factual and Procedural Background

On September 23, 1999, defendant was convicted after jury trial of conspiracy to possess with intent to distribute cocaine hydrochloride. *See* Rec. Docs. 178, 252. On May 3, 2000, Judge Morey L. Sear sentenced defendant to 360 months of imprisonment. (Rec. Doc. 252) Defendant has served approximately 268 months of that sentence and was housed at Yazoo City Medium Federal Correction Institution ("Yazoo") with a projected release date of July, 25, 2025. *See* https://www.bop.gov/inmateloc/ (accessed on July, 15 2021).

On April 5, 2020, defendant authored a motion to this Court, arguing that fear of COVID-19 and alleged liver problems made him eligible for compassionate release. Rec. Doc. 401 at 1-2. The

1

government responded to defendant's motion, arguing that Cage had not satisfied the requirements for compassionate release. Rec. Doc. 405 at 1. On May 24, 2020, defendant replied to the government's opposition. Rec. Doc. 406 at 1-3. Following his reply, Cage sent forms of correspondence to this Court clarifying his position, herein treated jointly as a supplemental brief to defendant's original motion for compassionate release. Rec. Docs. 407, 408, 409, 410.

On March 27, 2020, this Court denied defendants motion without prejudice to refile "upon satisfaction of the 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement along with other relevant material noted infra, e.g. medical records." Rec. Doc. 414 at 5.

On June 1, 2021, defendant attached a Request for Administrative Remedy form to an expedited motion for compassionate release with the same facts as his previous motion. Rec. Doc. 415 at 3. Defendant's spouse also submitted a letter and accompanying documents in support of defendant's position, herein referred to as Danielle Cage's supplemental brief in support of defendant's motion. *See* Rec. Doc. 416.

On July 12, 2021, the government filed a memorandum in opposition to defendant's motion, arguing that Cage has yet to demonstrate extraordinary and compelling reasons supporting his release. Rec. Doc. 418 at 1.

Cage's sentencing concerns do not constitute extraordinary and compelling reasons. While Cage's guideline range would be lower today due to U.S.S.G. Amendment 798 than when he was originally sentenced, that amendment was not retroactive and therefore did not affect Cage's sentence. While there is discretion and authority to consider a reduction for the latter grounds as an extraordinary or compelling reason, Cage's conduct negates exercising that discretion in this instance. §3553(a) factors do not support Cage's immediate release, citing his criminal history, serious nature, instant conviction, failure to timely accept responsibility and disciplinary record while incarcerated.

## LAW AND ANALYSIS

### A. Exhaustion of Administrative Remedies

A motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) may be granted only if filed "after defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A). If defendant can show that he has exhausted all administrative remedies, the court may reduce defendant's term of imprisonment upon a finding that "(i) extraordinary and compelling reasons warrant such a reduction" and "(ii). . .such a reduction

3

is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Bureau of Prisons ("BOP") has a four-step administrative process for resolving grievances by inmates. *Huff v. Neal,* 555 F.App'x. 289, 292-93 (5th Cir.2014). The court in *Huff v. Neal* outlines BOP's four-step process for resolving grievances by inmates.[1] *Id.* The Yazoo facility has the same administrative remedy process as the one seen in *Huff*. Bureau of Prisons, *Admission and Orientation Handbook FCC Yazoo City*, 8-9 (last revised October 2011),https://www.bop.gov/locations/institutions/yaz/YAX_aohandbook.pdf.

The government first contends that Cage's informal request, BP-8, was not enough to exhaust administrative remedies. Rec. Doc. 418 at 3. The government maintains that Cage must have completed a formal request BP-9 form to properly exhaust administrative remedies. *Id.* Some courts have required the entire process must be

---

[1] First, an inmate must attempt to informally resolve the issue with the staff. 28 C.F.R. § 542.13(a). The Inmate Handbook for the facility in which Huff was incarcerated instructs that an inmate must attempt informal resolution by filing a form BP-8. Second, if informal resolution is unsuccessful, the inmate must submit a formal written Administrative Remedy Request (form BP-9) to the warden within twenty days after the date on which the basis for the request occurred. 28 C.F.R. § 542.14. Third, if the inmate is not satisfied with the warden's response, he may submit an appeal (form BP-10) to the Regional Director within twenty days of the date of the warden's response. 28 C.F.R. § 542.15. Fourth, if the inmate is not satisfied with the Regional Director's response, the inmate may submit an appeal (form BP-11) to the General Counsel within thirty days of the Regional Director's response. 28 C.F.R. § 542.15. An inmate has not exhausted his administrative remedies until his claim has been denied at all levels.

*Huff,* 555 Fed.Appx. at 292-93 (explaining the BOP's administrative process for resolving grievances by inmates in more detail).

followed for an inmate whose claim is denied to prove they have exhausted all administrative remedies. *See United States v. Arroyo*, No. CR 08-308, 2020 WL 4504439, at *2 (E.D. La. Aug. 5, 2020) (Lemmon, J.) (denying motion to reduce sentence based on defendant's failure to file a BP-10 form); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020); *Cf. Tuttle v. Ma'at*, No. 2:21-CV-01039, 2021 WL 2544363, at *2 (W.D. La. June 21, 2021) (ordering dismissal of defendant's claims if defendant failed to provide copies of his BOP-8, BOP-9, BOP-10 and BOP-11; and facility responses).

However, the BOP's four step process is not required for an individual to exhaust administrative remedies in cases where they have received no response to their BP-8 forms. *See United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (granting compassionate release for movant who provided written petition to the warden and subsequent follow-up emails); *United States v. Peterson,* No. CR 02-611, 2021 WL 63277, at *1 (E.D. Pa. Jan. 6, 2021) (finding defendant met requirements for exhaustion by filing a BP-8 form and receiving no response). The plain language of the statute supports this position. The statute makes no mention of a formal request requirement for requests that receive no responses. 18 U.S.C.A. § 3582. The statute only requires "receipt of such a request by the warden of defendant's facility". 18 U.S.C.A. § 3582.

5

Cage received no response to the BP-8 form he submitted to his counselor, who he alleges had told him she would pass it onto her supervisor. Rec. Docs. 407, 408. The government urges the Court to place weight on the fact that Cage gave his BP-8 form to his counselor, rather than the warden directly. *See* Rec. Doc. 418 at 4. However, this Court already identified that the relevant inquiry is whether Cage provided evidence that his request for compassionate release was received by the warden, not whether the request was given to the warden directly.[2] CITE.

The government correctly argues that courts are not unified as to whether they consider a BP-8 form given to a counselor as sufficient proof of the warden receiving defendant's request. *See United States v. McLin,* No. 1:17-CR-110-LG-RHW, 2020 WL 3803919, at *4 (S.D. Miss. July 7, 2020), aff'd, 840 F. App'x 804 (5th Cir. 2021); *see also United States v. Resnick,* 451 F. Supp. 3d 262, 268-69 (S.D.N.Y. 2020); *but see United States v. Edwards,* No. 3:14-CR-30183-NJR-3, 2020 WL 4673158, at *3 (S.D. Ill. Aug. 12, 2020).

28 C.F.R. § 571.61, the statute describing the BOP's initiation of a request for extraordinary or compelling circumstances, states that "[a] request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the [w]arden." However, the statute does not include any modifying terms that

---

[2] This court's previous order may have mistyped BP-8 forms as B98 forms, or this may be the title of the Yazoo facility's institutional equivalent of the BP-8 form.

6

would indicate the warden must be the first party to receive the request. *Id.* The government's position would be substantiated if the statute contained such phrases as "directly" or "only" following the word "submitted," but that is not the case. *See id.* Rather, when viewed in conjunction with 18 U.S.C.A. § 3582, a plain interpretation of this statute does not include a requirement that a counselor cannot be the first one to receive the document. The statutes only require that the warden receive the request.

Cage has provided evidence supporting his contentions that he filed a request and followed up on that request when he received no response. Rec. Docs. 407, 408. He has maintained that his counselor will verify that she delivered Cage's request to her supervisor. Rec. Docs. 407, 408. There is no evidence in the record refuting that the request did not travel across the proper channels, or any evidence indicating that the warden did not receive this request. Rec. Doc. 418. Similar to *Perdigao,* defendant's follow up emails, in conjunction with his BP-8 request, serve to establish that defendant request lapsed after 30 days from the receipt of such a request by the warden. The court's only reservation against this conclusion is a lack of direct evidence that the warden received this request.

7

**B.   Extraordinary and Compelling Reasons**

  **1. Medical Conditions**

Assuming defendant has met § 3582(c)(1)(A)'s exhaustion requirement authorizing this Court to consider the merits of his motion, Cage again fails to establish any extraordinary or compelling reason at this time to justify a sentence reduction. *See* Rec. Doc. 414 at 5.

The Sentencing Commission identified four "extraordinary and compelling reasons" that may warrant a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) "other reasons." U.S.S.G. § 1B1.13 cmt. n.1 (A)-(D)(2018). "The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *United States v. Thompson*, 984 F.3d 431, 434-35 (5th Cir. 2021). Courts often deny a defendant's request for failure to demonstrate an extraordinary or compelling justification for compassionate release. *See United States v. Henderson*, No. CR 11-271, 2020 WL 2850150, at *3 (E.D. La. June 2, 2020) (Milazzo, J.) ("Defendant does not point to, nor do the medical records provided by the Government reveal, any medical condition that might warrant an extraordinary and compelling reason to grant his release."); *United States v. Wells*, No.: 17-104, 2021 WL 199386, at *3 (E.D. La. Jan. 19, 2021) (Barbier, J.) ("Defendant has merely alleged

8

that he suffers from kidney disease without attaching any supporting evidence of said disease, nor identifying what particular ailment Defendant suffers from."); *United States v. Sonnier*, No. 14-168, 2020 WL 4601638, at *3 (E.D. La. Aug. 11, 2020) (Africk, J.) (denying motion for compassionate release because defendant failed to demonstrate a serious physical or medical condition).

When defendant seeks compassionate release on the basis of his underlying medical conditions, "extraordinary and compelling" reasons exist when defendant, who does not pose a danger to the community, is suffering from a terminal illness,[3] a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of age that substantially diminishes defendant's ability to provide self-care. *Henderson*, 2020 WL 2850150, at *2 (citing U.S.S.G. § 1B1.13). Defendant bears the burden in demonstrating "extraordinary or compelling reasons". *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Cage did not establish that his liver condition was an "extraordinary and compelling reason" for sentence reduction. In ruling on Cage's previous motion for compassionate release, this Court noted that defendant's medical records were necessary to

---

[3] The Sentencing Commission included the following examples of a "terminal illness": metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. *See* U.S.S.G. 1B1.13.

9

"[m]eaningfully assess the nature of his liver problems and whether they present an extraordinary or compelling reason for compassionate release." Rec. Doc. 415 at 5. Although Cage noted his attempts to request his medical records, Cage failed to submit these records to the Court. Rec. Doc. 407 at 1. The only medical records of Cage that are available to review are those that the government attached to their opposition. *See* Rec. Doc. 418-5. Without deciding whether defendant's failure to produce his own medical records defeats his claim, we will examine the merits of Cage's claim.

Consultation of the records does not support Cage's position. The following health conditions were identified as of July, 2, 2021: non-interventional thalassemia, Hepatitis C, poor vision, and chronic apical periodontitis. *See* Rec. Doc. 418-5 at 55-56. Of the aforementioned conditions, Cage expressly mentions liver problems in the original and subsequent motions. Rec. Docs. 401; 415. We recognize that inmates with liver disease may be at an increased risk for severe illness as a result of Covid-19. *United States v. Barnes*, No. CR 14-86, 2020 WL 3606354, at *2 (E.D. La. July 2, 2020). The medical records generally indicate that Cage's "liver problems" are likely in connection with his Hepatitis C diagnosis. *See* Rec. Doc. 418-5 at 55, 58. Without further evidence, asymptomatic Hepatitis C has not been recognized as a condition that would warrant a modified release. *Barnes*, 2020 WL 3606354, at

10

*2 (finding defendant with asymptomatic Hepatitis C had no evidence of liver disease and therefore was not at a higher risk for contracting COVID-19); *Arroyo*, 2020 WL 4504439, at *2; *See also United States v. Ellis*, No. CR 15-124, 2020 WL 5073562, at *4 (E.D. La. Aug. 26, 2020). Cage has not had extensive treatment at the Yazoo facility for his Hepatitis C, making it is unclear as to whether his condition is asymptomatic. Of significance, Cage's medical records show he has not reported pain on anything significant associated with the condition in years. *See* Rec. Doc. 418-5 at 58. The medical conditions, including presumably the asymptomatic Hepatitis C diagnosis, do not warrant an extraordinary or compelling reason for Cage's release.

### 2. Refusal of COVID-19 Vaccine

On March 9, 2021, Cage declined to receive the Pfizer COVID-19 vaccine. Rec. Doc. 418 at 7. Where inmates have refused the COVID-19 vaccine, courts generally denied compassionate release. *See United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (cautioning vaccination refusal would create a perverse incentive for defendants to refuse COVID-19 vaccines to bolster their compassionate release motions"); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021); *United States v. Strother*, No. 4:17-CR-79, 2021 WL 2188136, at *8 (E.D. Tex. May 27, 2021) ("[Defendant] cannot be heard to complain

about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated."). Refusal of the vaccine is the incarcerated individual voluntarily declining to "provide self-care." *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021).

Cage fails to demonstrate that he suffers from a serious physical or medical condition, or combination that would diminishes his ability to provide self-care outside of what is available within the BOP facility. Rec. Doc. 415-5 at 55. The record does not indicate any serious physical or medical conditions, or combination that would be complicated by administration or otherwise prevent Cage from receiving the COVID-19 vaccine. *Id.* In fact, the prison's ability to vaccinate its incarcerated population demonstrates the prison's ability to provide adequate medical care.[4]

### 3. Age and Other Reasons

To claim an "extraordinary and compelling reason" on the basis of an incarcerated individual's age, the Commission notes that the individual must be at least 70 years old. Defendant is 63 years old. Rec. Doc. 418 at 7.

---

[4] BOP reports that Yazoo facility was the seventh most vaccinated facility for prisoners, with 1932 inmates at Cage's facility have been vaccinated. https://www.bop.gov/coronavirus/. 360 staff members have been vaccinated. *Id.*

12

The materials submitted by defendant and Danielle Cage emphasize defendant's rehabilitative efforts. Rec. Docs. 416; 401. However, rehabilitative efforts alone are expressly excluded from being considered an "extraordinary and compelling reason" warranting sentence reduction by the BOP. 28 U.S.C.A. § 994. Defendant is not eligible to claim an "extraordinary and compelling reason" based on his age. To claim an "extraordinary and compelling reason" on the basis of an incarcerated individual's age, the Commission notes that the individual must be at least 70 years old. Defendant is 63 years old. Rec. Doc. 418 at 7. Cage is correct in mentioning how, if sentenced today, the sentencing guideline range would be lower because his burglary convictions would not be considered crimes of violence under U.S.S.G. § 4B1.2(a). However, that change in the guidelines under Amendment 798 was not retroactive. *United States v. Gonzales*, 714 F. App'x 367, 370–71 (5th Cir. 2017). Conversely, reasons below negate early release.

Furthermore, general concerns regarding COVID-19 are insufficient to justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *Sonnier*, 2020 WL 4601638 at *4; *Henderson*, 2020 WL 2850150 at *3. Cage's fear concerning BOP staff utilizing face masks, gowns and gloves to enter his unit actually goes to support

13

the government's contention that the BOP has taken efforts to protect inmates like Cage from the virus. Rec. Doc. 401 at 2.

Therefore, considering the aforementioned mitigating circumstances, we find that there are no extraordinary or compelling reasons that justify compassionate release at this time.

## C.  Safety to Others and the Community

Even if we were to find Cage's circumstances to be extraordinary or compelling, Cage fails to demonstrate that his early release would not pose a threat to safety to others and the community. Defendant seeking compassionate release also bears the burden to "demonstrate that he is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *United States v. Reed*, 464 F.Supp.3d 854, 860 (E.D. La. 2020) (Fallon, J.).

"Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of defendant, and the nature of seriousness of the danger to a person or the community at large posed by defendant's release." *Id*. The history and characteristics of the movant includes examining the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and

14

record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. 18 U.S.C.A. § 3142(g)(3)(A-B).

Although a defendant may not have been convicted of a violent crime, "that does not make his offense any less serious or dangerous to the community." *United States v. Bailey*, No: 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020)(citing United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'")).

Cage was convicted by a jury on September 23, 1999 of conspiracy to possess with intent to distribute cocaine hydrochloride. Rec. Doc. 418-2. Prior to his conviction, Cage had an extensive criminal background, including multiple felony convictions from 1976 to 1992 that garnered him 22 criminal history points. *See* Rec. Doc. 418 at 20. His prison disciplinary record includes violations for possessing a dangerous weapon, possessing a hazardous tool, possessing intoxicants, refusing a drug/alcohol test, using intoxicants, and one incident of assault. *Id*. Mr. Cage has a history relating to drug or alcohol abuse, reflected not only in his original charges, but within his disciplinary record. *See* Rec. Doc. 418-3 at 1-3. Cage's assault incident was one without

15

serious injury and occurred in 2010. *Id*. at 1. Prior to being disciplined for possessing a hazardous tool, which occurred on February 6, 2021, defendant had not been cited for any disciplinary incidents since April 14, 2011. *See id*. Cage has served 73% of his sentence, a little over 22 years of a 30-year sentence, which does not significantly undercut the serious nature of his offense, the deterrent value of his sentence, or public protection. *See* Rec. Doc. 418-2 at 1-2. Cage's criminal history prior to prison reflected a pattern of dangerous behavior. He is commended for participation in prison programs that offer rehabilitation and services. He and his spouse Danielle have submitted evidence that Cage has pursued a cursory investigation into his proposed front-door lockbox invention. *See* Rec. Doc. 415 at 4-7.

Danielle provides documentation substantiating Cage's claims that he is a published author. *Id*. Cage's education transcript is noteworthy. *See* Rec. Doc. 418-4. He earned a GED while incarcerated, and his transcript includes a multitude of reentry seminars and other classes dating from June 21, 2005 to November 30, 2019. Rec. Doc. 415 at 2.

Cage's education and rehabilitation efforts as well as the availability of a support network upon release tend to mitigate potential danger posed to the safety of others and his community if released. On balance however, Cage's criminal history, the nature of the instant conviction, his conduct and

16

disciplinary record as a whole serve to weigh against compassionate release. Based upon the forgoing analysis and factors; there exist no extraordinary or compelling reason at this time to justify a sentence reduction.

New Orleans, Louisiana, this __10th__, March, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE